# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor, United States<br>Department of Labor,<br><br>                 Plaintiff,<br><br>v.<br><br>RIVERSEDGE ADVANCED RETIREMENT<br>SOLUTIONS, LLC., a Pennsylvania<br>Company, PAUL PALGUTA, an individual,<br><br>v.<br><br>MID ATLANTIC TRUST COMPANY dba<br>AMERICAN TRUST CUSTODY, a<br>corporation, SCHWAB RETIREMENT<br>TECHNOLOGIES, INC., a corporation, and<br>CHARLES SCHWAB TRUST BANK, a<br>corporation, *solely as Rule 19 defendants,*<br><br>             Defendants. | Civil Action Case No. 2:24-cv-00104 (MJH) |

## PRELIMINARY INJUNCTION

**JULIE A. SU,** Acting Secretary of the United States Department of Labor ("Acting Secretary"), filed a Motion for a Temporary Restraining Order (TRO)and Motion for an Order to Show Cause Why This Court Should Not Enter a Preliminary Injunction. This Court held an evidentiary hearing on January 29, 2024 and February 1, 2024, at which the Acting Secretary presented testimony and exhibits in support of her claim that Defendants RiversEdge Advanced Retirement Solutions and Paul Palguta, the "RiversEdge Defendants," while acting as recordkeepers or third-party administrators of retirement plans, embezzled and mismanaged millions in plan assets from 17 retirement plans. Counsel for all Defendants attended both days of the TRO hearing but did not present evidence.

On January 29, 2024, the Court entered a verbal TRO freezing the RiversEdge Defendants' bank accounts and prohibiting these Defendants from acting as service providers or fiduciaries to any retirement plans. On February 5, 2024, the Court entered a written TRO containing the same relief, *inter alia*, appointing a third-party administrator to the RiversEdge 401(k) plan and another independent fiduciary for the ERISA and non-ERISA plans that had been mismanaged by the RiversEdge Defendants. ECF 26 and 29. The Court ordered the RiversEdge Defendants to bear the cost of the independent fiduciaries' work. *Id.* The Court also ordered the RiversEdge Defendants to show cause by February 9, 2024, why the Court should not enter a preliminary injunction. ECF 26.

On February 9, 2024, the RiversEdge Defendants consented to entry of a preliminary injunction containing all the relief included in the TRO for the duration of this litigation. ECF 37 at p. 3. While refusing to concede liability, they did "not contest whether plaintiff has met her burden of proving entitlement to preliminary injunctive relief." *Id.* at p. 3. They consented to the entry of a preliminary injunction containing all the relief in the Court's TRO. *Id.* at pp. 1 and 3. On February 14, 2024, this Court held a preliminary injunction hearing. The RiversEdge Defendants did not introduce any evidence or argument in response to the Court's Order to Show Cause.

Based on the pleadings, the Memorandum in Support of the Acting Secretary's Motion, the testimony and exhibits presented at the evidentiary hearings, the Court hereby enters this Preliminary Injunction.

## LEGAL BACKGROUND

ERISA is a comprehensive and remedial statute designed to promote and protect the interests of participants and their beneficiaries in employee benefit plans. *Shaw v. Delta Air*

*Lines, Inc.*, 463 U.S. 85, 90 (1983); *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361-62 (1980).  Courts have repeatedly found that, under ERISA's broad remedial provisions, injunctive relief, such as that sought in this action, is appropriate.  *See, e.g., Donovan v. Mazzola*, 716 F.2d 1226, 1238-39 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984).  In passing ERISA, Congress declared a national public interest in protecting "the continued well-being and security of millions of employees and their dependents . . . directly affected by these plans." ERISA § 2(a), 29 U.S.C. § 1001(a); *Johnson v. Couturier*, 572 F.3d 1067, 1082 (9th Cir. 2009); *Herman v. South Carolina Nat'l Bank,* 140 F.3d 1413, 1423 (11th Cir. 1998).  In furtherance of this goal, "Congress intended to make available the full range of legal and equitable remedies in cases of ERISA violations." *Whitfield v. Tomasso*, 682 F. Supp. 1287, 1306 (E.D.N.Y. 1988) (citing S.Rep. No. 93-127H, reprinted in 3 U.S. Code Cong. & Admin.News 4639, 4838, 4871 (1974)); *accord South Carolina Nat'l Bank*, 140 F.3d at 1423 ("It remains the intent of Congress that the courts use their power to fashion legal and equitable remedies that not only protect participants and beneficiaries but deter violations of the law as well.")

Enforcement actions brought by the Secretary of Labor under ERISA are aimed not only at recovering losses on behalf of plan participants, but also at "deterring future losses by ERISA plans, assuring uniform compliance with fiduciary obligations, and maintaining public confidence and integrity in the financial wellbeing of the pension system." *Chao v. Chermak*, No. 1:05CV1935, 2006 WL 3751191, at *2 (N.D. Ohio Dec. 18, 2006). In addition to providing for the removal of existing plan fiduciaries, ERISA authorizes the appointment of independent fiduciaries to carry out the proper administration and management of benefit plans and recovery of misappropriated plan assets from ERISA violators. *Mazzola*, 716 F.2d at 1238-39; *Solis v. Vigilance, Inc.*, No. C-08-05083, 2009 WL 2031767, at *3 (N.D. Cal. July 9, 2009); *Chao v.*

3

*Azon Employees Ret. Plan*, No. 3:06-CV-1006, 2007 WL 4287784, at *4 (N.D.N.Y. Dec. 7, 2007); *Chao v. Zoltrix*, No. C-07-00610, 2007 WL 2990429, at *3 (N.D. Cal. Oct. 11, 2007).

One of the remedies expressly enumerated in ERISA is removal of a breaching fiduciary. ERISA § 409(a), 29 U.S.C. § 1109(a); *see Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) (fiduciary subject to such other equitable or remedial relief as the court may deem appropriate including removal of the fiduciary); *Martin v. Feilen*, 965 F.2d 660, 672 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993) (permanent injunction imposed on fiduciary who demonstrated a "fundamental misunderstanding" of ERISA). In an action brought to enforce a remedial federal statute that provides a Court with broad jurisdiction to fashion relief, an injunction freezing assets and appointing an independent fiduciary is particularly appropriate to ensure that participants suffer no additional losses due to ongoing misconduct. *Commodity Futures Trading Comm'n v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978). Thus, this Court will order not only a freeze of the RiversEdge Defendants' assets, but also appointment of an independent fiduciary with the authority to conduct an accounting of plan assets and a second independent fiduciary to terminate the RiversEdge 401(k) Plan.

## PRELIMINARY INJUNCTION STANDARD

When a party seeks a preliminary injunction, courts evaluate the following factors:

(1)     a likelihood of success on the merits;

(2)     that it will suffer irreparable harm if the injunction is denied;

(3)     that granting preliminary relief will not result in even greater harm to the nonmoving party; and,

(4)     that the public interest favors such relief.

*Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.2004); *Oburn v. Shapp*,

4

521 F.2d 142, 147 (3d Cir.1975); *Scott v. Family Dollar Stores*, 2020 WL 7296780, at *3 (W.D.Pa.

Dec. 11, 2020). These four factors comprise a balancing test; although the moving party must

normally make a showing for the first two prongs, courts ultimately must weigh all relevant

facts. *Kos Pharmaceuticals*, 369 F.3d at 711.

Courts do "not require that the right to a final decision after trial be wholly without doubt;

the movant need only show a reasonable probability of success." *Issa v. Sch. Dist. of Lancaster*,

847 F.3d 121, 131 (3d Cir. 2017). Courts should pay particular regard for the public

consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def.*

*Council*, 555 U.S. 7, 24 (2008).

## FACTUAL BACKGROUND

At the evidentiary hearings, the Acting Secretary presented exhibits and testimony

showing egregious ERISA violations by the RiversEdge Defendants. These Defendants

presented no evidence to the contrary. Thus, the evidence presently before the Court supports the

following preliminary factual findings:

A.    The RiversEdge Defendants Exerted Authority Over Millions of Dollars in
      ERISA Plan Assets.

Before this Court entered the TRO on January 29, 2024, RiversEdge had actively served

as a third-party administrator and/or recordkeeper for at least 240 retirement plans, most of

which were governed by ERISA. A third-party administrator of a retirement plan is generally an

agent authorized by a plan to manage and administer plan assets, such as distributing funds to

retirees. A recordkeeper generally makes records about participants in a retirement plan, what

investments they own, and investment elections, contributions, and distributions. Together,

RiversEdge client plans hold millions of dollars in plan assets. Many of the retirement plans are covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* RiversEdge also is the sponsor of its own retirement plan, the RiversEdge 401(k) Profit Sharing Plan, and the RiversEdge Defendants are fiduciaries to that plan.

MATC, a corporation, serves as an asset custodian for many of the plans by holding the plan assets for various retirement plans in trust accounts, subject to the direction of the plan sponsors and RiversEdge as the plan sponsors' agent. As an asset custodian, MATC provides custodial, cashiering, and tax reporting services to many of these plans. MATC entered into separate contracts with each of those plans, and each contract appoints RiversEdge as agent for the plan, authorizing MATC to take all trade, cash activity, and tax reporting instructions from RiversEdge. The plans also entered Retirement Plan Services Agreements with RiversEdge. Multiple people at RiversEdge, including but not limited to Paul Palguta, have authority to execute trades on those accounts.

Charles Schwab Trust Bank, a corporation, also serves as an asset custodian by holding the plan assets for other plans in trust or custodial accounts, and Schwab Retirement Technologies, Inc. is a software licensor and data hosting provider (collectively "Schwab").

B.    The RiversEdge Defendants Misappropriated Millions in ERISA Plan Assets.

The RiversEdge Defendants misappropriated and misallocated retirement plan assets from seventeen retirement plans, fourteen of which were covered by ERISA ("the Mismanaged Plans"). The RiversEdge Defendants also transferred assets among the trust accounts for these plans and generated false records to conceal these transfers. Because of the RiversEdge's misappropriation and misallocation of plan assets among the plans, some of

these trust accounts now hold plan assets of unaffiliated ERISA-covered plans; other trust

accounts are under-funded. The Mismanaged Plans are identified below:

(1)    RiversEdge 401(k) Profit Sharing Plan;

(2)    Hampton Technical Associates 401(k) Profit Sharing Plan;

(3)    Max Environmental Technologies, Inc. 401(k) Savings Plan;

(4)    LCBC Church 403(b) Plan;

(5)    Medical Predictive Science Corporation;

(6)    Christian Aid Mission 403(b) Plan;

(7)    Elite Mechanical, Inc. 401(k) Profit Sharing Plan;

(8)    Leech Tishman Fuscaldo & Lampl, LLC 401(k) Profit Sharing Plan;

(9)    W.N. Tuscano Agency, Inc. 401(k) Savings Plan;

(10)   St. Barnabas Health System Retirement Savings Plan;

(11)   Hawaiian Island Dental, Inc. 401(k) Plan;

(12)   Beaver County Deferred Compensation Plan;

(13)   Ad-base Group 401(k) Plan;

(14)   Arc of Wabash County Inc. 403(b) Plan;

(15)   Adventure WV Plan;

(16)   The National Fruit Product Co., Inc. 401(k) Employee Savings Plan; and

(17)   Family Medicine of Albemarle 401(k) Plan.

The LCBC Church Plan, Christian Aid Mission 403(b) Plan, and Beaver Country Deferred

Compensation Plan are non-ERISA plans. The plans serviced by RiversEdge outside the group

of the Mismanaged Plans will be referred to as the "Client Plans." The Client Plans and

Mismanaged Plans together will be referred to as the "Plans."

1. *The RiversEdge Defendants Shuffled ERISA Plan Assets Among Unrelated Trust Accounts.*

In addition to the plan accounts at MATC, RiversEdge established a "corporate paying agent account" with MATC. This account is a book entry account held under Account #RERREBTE (hereinafter "#RERREBTE"). The #RERREBTE account is corporate custody account. The account can only hold cash awaiting further disbursement instructions as entered by RiversEdge personnel. Since at least June 2017, the RiversEdge Defendants have used the #RERREBTE account to illegally transfer plan assets between unrelated trust accounts.

For example, on or about October 27, 2023, Paul Palguta placed an order ("the Order") to buy shares for a non-ERISA plan called the Beaver County Deferred Compensation Plan. However, that plan did not have sufficient cash available to complete the Order. Exhibit 2 (Exhibit 2 Declaration of Michele Coletti; Coletti Testimony.) MATC contacted Palguta about the insufficient cash, and Palguta stated that RiversEdge would correct the problem. *Id*. On or about November 14, 2023, Palguta notified MATC that he had corrected the problem. MATC confirmed that the Beaver County Plan had the cash needed to complete the order, but determined the cash needed to complete the order had been transferred that day to the Beaver County Plan directly from RiversEdge's account, #RERREBTE, in a transaction that Palguta initiated on November 13, 2023. *Id.*

The assets to complete the Order had been misappropriated from six plans, four of which were ERISA plans on November 13, 2023, when the RiversEdge Defendants[1] transferred assets from six unrelated plan accounts into #RERREBTE, as follows:

   a.   $167,452.00 from Christian Aid Mission 403(b) Plan, a non-ERISA plan;

---

[1] The transactions were effected using both Paul Palguta and Jennifer Palguta's user IDs, but, as explained later, Jennifer Palguta has not worked for RiversEdge for many years.

b. $539,682.00 from LCBC Church 403(b) Plan, a non-ERISA plan;

c. $126,967.00 from Elite Mechanical, Inc, 401(k) Profit Sharing Plan, an ERISA plan;

d. $210,637.00 from Hawaiian Island Dental, Inc. 401(k) Plan, an ERISA plan;

e. $223,123. Hampton Technical Associates, Inc. 401(k) Profit Sharing Plan, an ERISA plan; and

f. $413,955.00 from The National Fruit Product Co., Inc. 401(k) Profit Sharing Plan, an ERISA plan.

*Id.* These transactions resulted in a total transfer of $1,681,816.00 from these plans to the #RERREBTE account. Palguta then transferred almost the same amount, $1,679,086.74, from the #RERREBTE account into the Beaver County Plan to fulfill the Order. *Id.*

This suspicious transfer of plan assets prompted MATC to begin an audit of RiversEdge's accounts. *Id.* This audit revealed that RiversEdge's #RERREBTE account had not received any outside cash since at least 2017; all cash deposits were from plan accounts. *Id.* MATC also found many instances of reverse flow of cash, in which the RiversEdge Defendants transferred cash from #RERREBTE into plan accounts. *Id.* RiversEdge was transferring cash from one plan trust account to another, running the funds through the #RERREBTE account. MATC's internal audit found seventeen (17) plans have experienced suspicious transactions, including RiversEdge's own 401(k) Profit Sharing Plan. *Id.*

2. *The RiversEdge Defendants Reported More Assets to the Government than were in the MATC Accounts.*

A Form 5500 is a document that certain ERISA plans must file annually with the U.S. Department of Labor to report information about the plan, including the amount of the plan's assets. Many of the Form 5500s prepared by RiversEdge overstated the assets that the plans held

at MATC by approximately the same amounts that were involved in transactions initiated by

Palguta and involving the #RERREBTE account. *Id.* Palguta told EBSA's investigator that none

of the plans with custodial accounts at MATC held funds anywhere else. Exhibit 1-B. Therefore,

the account balances should have conformed to the amounts reported to the government on the

Form 5500s. They do not; assets are missing, as described below:

     a.  Family Medicine of Albemarle ERISA Plan Has at Least $569,798.00 in Unaccounted for Assets.

Family Medicine of Albemarle 401(k) Plan, an ERISA Plan, has a deficiency of

$591,269.00 when its 2022 Form 5500 reported balance is compared to its MATC account

balance. In that plan year, the RiversEdge Defendants transferred $569,798 from that plan's

account to the RiversEdge account, #RERREBTE. *Id.*

     b.  The Hawaiian Island Dental, Inc. 401(k) Plan Has at Least $735,177 in Unaccounted for Assets.

Hawaiian Island Dental, Inc. 401(k) Plan has a deficiency of $735,177 when its Form

5500 reported balance for 2022 is compared to the account value from the MATC statement.

That year, RiversEdge made three transfers out of the Hawaiian Islands Dental, Inc. 401(k) Plan

account to RiversEdge's account, #RERREBTE, totaling $714,265.00. *Id.*

     c.  The Hampton Technical Associates ERISA Plan has at Least $749,358 in Unaccounted for Assets.

Hampton Technical Associates 401(k) Profit Sharing Plan, an ERISA Plan, has a

deficiency of $752,576.00 when its Form 5500 reported balance for 2022 is compared to the

account value from the MATC statement. That year, RiversEdge made nine transfers out of the

Hampton Technical Associates 401(k) Profit Sharing Plan account to RiversEdge's account,

#RERREBTE, totaling $749,358.00. *Id.*

    d.   The W.N. Tuscano Agency ERISA Plan has at least $2,334,278 in Unaccounted Assets for Plan Year 2021 and $2,425,204 in Unaccounted Assets for Plan Year 2022.

RiversEdge made certain transactions into and out of the W.N. Tuscano 401(k) Plan in 2021 and 2022 that correlate almost exactly with the deficiency between the assets reported on its Form 5500 and the assets actually in its MATC custodial account for those years.  Exhibit 2. The transactions are described below:

1.    The 2021 Form 5500 exceeded the MATC statement by $2,334,278.

2.    In 2021, three transactions were posted by RiversEdge for a total of $2,274,699 from the plan account to RiversEdge's #RERREBTE account, which is close to the $2,334,278 overstatement of assets on the 2021 Form 5500.

3.    The 2022 Form 5500 exceeded the MATC statement by $2,425,204.

4.    In 2022, RiversEdge made three transfers from the plan account to #RERREBTE totaling $1,032,807 and one transfer from #RERREBTE back to the plan account, for a net transfer out of the plan account of $116,633.

When combined with the 2021 transfers out, the net transfers out for the two-year period ending December 31, 2022 was $2,391,332, which is close to the $2,425,204 overstatement of assets on the 2022 Form 5500.  *Id.*

    *3.  RiversEdge's Client Accounts Were Short of Funds.*

The RiversEdge statements for the W.N. Tuscano 401(k) Plan described above showed a deficiency of more than $5 million by March 2023. Exhibit 3, Affidavit of Susan Crary, Vice President of Finance for W.N. Tuscano. From April 1, 2013 through December 1, 2023, this plan used RiversEdge as its third-party administrator. *Id.* During this period, MATC was the plan's sole asset custodian. *Id.* MATC held the plan assets in a trust account and provided quarterly statements to the plan showing the account balances. RiversEdge also provided quarterly statements showing the account balances. Comparing the MATC statements with the RiversEdge

statements, fiduciary Susan Crary noticed that there were fewer assets shown on the MATC

statement than the RiversEdge statement; more than $5 million was missing from the MATC

account. *Id*. Crary identified multiple transfers of plan assets into RiversEdge account

#RERREBTE. Specifically:

   a. On June 30, 2021, $1,294.,935.00 was transferred out of the Plan to
      #RERREBTE.

   b. On September 30, 2021, $453,892.50 was transferred out of the Plan to
      #RERREBTE.

   c. On December 30, 2021, $525,872.00 was transferred out of the Plan to
      #RERREBTE.

   d. On June 30, 2022, $312,457.35 was transferred out of the Plan to #RERREBTE.

   e. On September 30, 2022, $266,457.35 was transferred out of the Plan to
      #RERREBTE.

   f. On October 12, 2022, $453,892.50 was transferred out of the Plan to
      #RERREBTE.

   g. On November 14, 2022, $916,174.08 was transferred into the Plan from
      #RERREBTE.

   h. On January 3, 2023, $1,349,712.00 was transferred out of the Plan to
      #RERREBTE.

   i. On March 31, 2023, $1,130,467.20 was transferred out of the Plan to
      #RERREBTE.

*Id.* When Crary asked Palguta repeatedly to explain the missing $5 million, Palguta replied that it

was due to a "system trading error" and would be corrected. *Id*. When Tuscano terminated its

relationship with RiversEdge, Palguta finally returned the $5 million. The source of that $5

million was transfers of money from several other unrelated plans.

   In addition, Randall Jaurequi, the owner of Hawaiian Island Dental and a Trustee for the

Hawaiian Dental, Inc. 401(k) Plan, stated that $1,736,877.47 had been removed from the Plan's

trust account. Exhibit 4, Affidavit of Randall Jaurequi. Specifically:

    a.  On September 30, 2022, $138,555.65 was transferred out of the plan to #RERREBTE;

    b.  On October 6, 2022, $317,688.40 was transferred out of the plan to #RERREBTE;

    c.  On November 14, 2022, $258,021.52 was transferred out of the plan to #RERREBTE;

    d.  On January 3, 2023, $193,555.65 was transferred out of the plan to #RERREBTE;

    e.  On October 10, 2023, $470,452.00 was transferred out of the plan to #RERREBTE;

    f.  On October 12, 2023, $147,967.25 was transferred out of the plan to #RERREBTE;

    g.  On November 14, 2023, $210,637.00 was transferred out of the plan to #RERREBTE.

*Id.*

    C.    <u>The RiversEdge Defendants Accelerated Their Embezzlement Since November 2023.</u>

        *1.  The RiversEdge Defendants Embezzled at Least $1,812,487.77 Since November 2023.*

From November 30, 2023, through January 4, 2024, RiversEdge and Palguta transferred $1,812,487.77 from the Mismanaged Plans, through their account at #RERREBTE, to the account at PNC Bank. Testimony of EBSA investigator James Moran and Moran Affidavit, Exhibit 1. The transactions were structured so as to avoid the MATC review of transactions over $25,000.00 For example, on November 22, 2023, Paul Palguta initiated two wire transfers to the RiversEdge corporate account at PNC for $24,756.00 and $23,975.00. On the same day, Jennifer Palguta, who is Palguta's wife, entered a wire to the PNC account in the amount of $23,250.00. Jennifer Palguta approved and released Palguta's two wire requests. Palguta approved his wife's

wire request. Had they entered a single wire request of $71,981.00, the transfer would have been

pended for MATC's review and approval. However, by structuring transactions to remain under

the $25,000.00 threshold, the transaction remained solely under the control of RiversEdge.

Exhibit 2. The MATC audit determined that all transactions out of the account to PNC Bank

were associated with the login IDs of either Paul or Jennifer Palguta. *Id.* Paul Palguta stated to

DOL investigators that his wife, Jennifer Palguta had not worked for RiversEdge for more than

six years. It is unknown who was using his wife's ID number to initiate and approve transactions.

From November 30, 2023 through January 4, 2024, the RiversEdge Defendants

accelerated their transfers of plan assets from trusts of the Mismanaged Plan to a RiversEdge

account, at PNC Bank continuing to run these plan assets through its #RERREBTE account.

Transfers into the #RERREBTE that during this period total $2,362,118.05. Specifically:

    a. $93,248.00 was transferred from the ERISA plan, Hampton Technical
       Associates 401(k) Profit Sharing Plan;

    b. $90,655.85 was transferred from the ERISA plan, Elite Mechanical, Inc.
       401(k) Profit Sharing Plan;

    c. $217,466.00 was transferred from the ERISA plan, The National Fruit
       Product Co., Inc. 401(k) Employee Savings Plan;

    d. $1,494,969.20 was transferred from the non-ERISA plan, LCBC Church;
       and

    e. $465,769.00 was transferred from the non-ERISA plan, Beaver County.
       Exhibit 2.[2]

During the same time period, the RiversEdge Defendants transferred $1,812,487.77 from

#RERREBTE to a RiversEdge bank account at PNC Bank through a series of transactions

seemingly structured to evade MATC's review. During this period, RiversEdge made 84 separate

---

[2] During the same time period, the RiversEdge Defendants also transferred $556,168.43 from the
RiversEdge #RERREBTE to the ERISA plan of Max Environmental Technologies, Inc.; and
$32,173.39 to the ERISA plan of W.N. Tuscano Agency, Inc. Exhibit 2.

transfers of less than $25,000.00. On December 27, 2023 alone, RiversEdge initiated 14 separate transfers totaling $308,306.70. *Id.*  On or about January 2, 2024, PNC's statements show that Palguta transferred more than $185,000 from the PNC account to himself in the form of cash ATM withdrawals or ACH transfers. Exhibit 1. These transfers occurred the same day that Palguta was interviewed by an EBSA investigator.

2. *The RiversEdge Defendants Attempted to Create Fraudulent User IDs for their MATC Account.*

On or about January 3, 2024, someone at RiversEdge attempted to change the user ID associated with Jennifer Palguta for its MATC #RERREBTE  account to "John Palguta." Paul Palguta told MATC that the change was made in error and the name associated with the account should remain "Jennifer Palguta." Exhibit 2. But as set forth above, Paul Palguta stated to DOL investigators that his wife had not worked for RiversEdge for at least the past six years. Exhibit 1-B. On or about January 10, 2024, someone at RiversEdge made multiple attempts to reactivate the user ID of a former employee of RiversEdge. The attempts failed as the person attempting to reactivate the account did not have the requisite information to unlock the password. Exhibit 2. Due to these attempts to circumvent their security  and access accounts, MATC removed RiversEdge's access to MATC's system for all of RiversEdge's clients on or about January 10, 2024. *Id.*

3. *The U.S. Department of Labor's Investigation Uncovered Further Improprieties.*

The U.S. Department of Labor's Employee Benefits Security Administration ("EBSA") investigated these issues. Reviewing the #RERREBTE ledgers, EBSA determined that RiversEdge and Palguta had transferred at least $5.5 million from that account to PNC Bank. Exhibit 1.

EBSA contacted at least four of the clients that MATC had identified and verified that all of their funds were at MATC, rather than at some other benefits custodian. *Id.* Therefore, the amount shown on the account statements that RiversEdge provided to these clients should have been the same as the amount of assets held in the trust accounts at MATC. But they were not the same. There were less plan assets in the trust accounts than shown on the RiversEdge statements. *Id.*

On January 11, 2024, the U.S. Department of Justice issued preservation letters to MATC and PNC asking them to freeze RiversEdge's accounts because they likely contained proceeds of a crime. DOJ has not stated to DOL whether they have obtained a court warrant to freeze the accounts.

> D.   Absent a Preliminary Injunction, Palguta or RiversEdge Could Have Access to Client Plan Accounts at Schwab.

The RiversEdge Defendants also service Client Plans that have assets held at Schwab on a custodial basis. In the absence of an injunction, Palguta or RiversEdge could still have access to these accounts. To protect these plans and their participants, the Court finds it necessary to prohibit the RiversEdge Defendants from accessing the Schwab accounts. The Court will retain the appointment of the independent fiduciary to assist the Client Plans in making decisions about replacing RiversEdge.

## THE ACTING SECRETARY'S CASE MEETS THE PRELIMINARY INJUNCTION STANDARD

The Acting Secretary has met the following four preliminary injunction factors: (1) a likelihood of success on the merits; (2) that irreparable harm will result if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and, (4) that the public interest favors such relief.

16

A.     The Acting Secretary Will Likely Succeed on the Merits.

1.     *ERISA Imposes Strict Fiduciary Standards.*

ERISA defines "fiduciary" in broad functional terms that easily encompass Defendants

RiversEdge and Palguta:

> [A] person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control respecting
> management of such plan or exercises any authority or control respecting
> management or disposition of its assets … or (iii) he has any discretionary
> authority or discretionary responsibility in the administration of the plan.

29 U.S.C. § 1002(21)(A); *see Kayes v. Pacific Lumber*, 51 F.3d 1449, 1459 (9th Cir. 1995).

Here, Defendants RiversEdge and Palguta exercised discretionary authority and control

regarding the management and disposition of ERISA plan assets when they arbitrarily moved

funds among various plans and when they embezzled plan funds. Thus, they are ERISA

fiduciaries despite language in their contracts with their clients disclaiming fiduciary status.

As fiduciaries of ERISA-covered plans, the RiversEdge Defendants were required to

comport their actions and conduct to the strict fiduciary standards enunciated in ERISA Section

404(a), 29 U.S.C. § 1104(a). Among ERISA's fiduciary duties are: the duty of loyalty, which is

the duty to act solely in the interest of the plan's participants and for the exclusive purpose of

providing benefits to them, ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) and the duty

of prudence, which requires a fiduciary to discharge his duties with the "care, skill, prudence and

diligence" that a prudent person acting in a like capacity and familiar with such matters would

use in similar circumstances, ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). ERISA's

fiduciary duties are the "highest known to law." *Couturier*, 572 F.3d at 1077. Fiduciary decisions

must be made with an eye single to the interest of the participants and beneficiaries. ERISA

§ 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000).

RiversEdge and Palguta disloyally and imprudently misappropriated ERISA-covered

retirement assets from the Mismanaged Plans when they transferred plan assets among trust accounts owned by separate Mismanaged Plans. They then issued fraudulent trust account statements to their clients showing that those transfers had not been made and that their trust accounts had not been raided. These Defendants made these transfers to cover shortfalls in plan accounts resulting from their embezzlement of plan assets. These Defendants obviously did not engage in such transfers for the benefit of participants and beneficiaries of the plans that actually owned the funds that were intended to provide retirement security. Rather, the RiversEdge Defendants took this money for their own benefit in violation of ERISA Section 404(a)(1)(A) and (B).

In addition to ERISA's fiduciary standards, ERISA Section 406 prohibits certain transactions between a plan and a party-in-interest. 29 U.S.C. § 1106.  A party in interest to an employee benefit plan is defined to include fiduciaries (such as the RiversEdge Defendants), a corporation owned primarily by a fiduciary (such as RiversEdge), an employee officer or manager of such corporation (such as Palguta), and a person providing services to a plan (such as the RiversEdge Defendants). *See* ERISA § 3(14), 29 U.S.C. § 1002(14). As parties-in-interest, the RiversEdge Defendants are forbidden by ERISA to engage in prohibited transactions. In pertinent part, ERISA Section 406(a), 29 U.S.C. § 1106(a) reads:

(a)     Except as provided in § 408 (29 U.S.C. § 1108):

    (1)     A fiduciary with respect to a plan shall not cause the plan to engage in a transaction if he knows or should know that such transaction constitutes a direct or indirect –

        (D)     transfer to, or use by or for the benefit of, a party in interest, any assets of the plan.

In addition to the conflict of interest prohibited transactions listed in ERISA flatly prohibits self-dealing. It reads, in pertinent part:

 (b)  A fiduciary with respect to a plan shall not –

   (1)  deal with the assets of the plan in his own interest or for his own account, [or]

   (2)  in his individual or any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interest are adverse to the interest of the plan or the interest of its participants or beneficiaries.

§ 406(a) and (b), 29 U.S.C. § 1106(a) and (b).

 Embezzling plan assets blatantly violates ERISA's prohibited transactions provisions. Parties with control over plan assets must not steal those assets. By transferring plan assets to the RiversEdge account at PNC and withdrawing more than $180,000.00 in cash from the as recently as January 4, 2024, the RiversEdge Defendants engaged in prohibited transactions.

 The RiversEdge Defendants also violated their obligations in connection with the aftermath of their misappropriation of plan assets. The Supreme Court has consistently held that an ERISA fiduciary owes a duty of impartiality to plan participants. *See Howe v. Varity*, 516 U.S. 489, 514 (1996) (describing duty of "trustee[s] to take impartial account of the interest of all beneficiaries"). Other courts have also noted that fiduciaries owe a duty to treat all participants and beneficiaries impartially. *Summer v. State Street*, 104 F.3d 105, 108 (7th Cir. 1997) ("picking and choosing among beneficiaries [would be] in violation of the traditional duty imposed by trust law of impartiality among beneficiaries"); *see also* Restatement of Trusts (Second), § 183 (1959) ("When there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them").

 The RiversEdge Defendants violated these duties when they transferred funds purposefully between the trust accounts of various Mismanaged Plans as needed to cover up the deficiencies in the accounts caused by their embezzlement. As a result, some of the Mismanaged Plans are short of funds, while others likely are not because they hold the assets of other

Mismanaged Plans. As fiduciaries, the RiversEdge Defendants were required not to transfer assets among the plans in this way. Their violations are clear and also alarming. This evidence shows that the Acting Secretary will likely succeed on the merits.

2.    *Irreparable Harm Is Likely in the Absence of Immediate Relief.*

Injunctive relief is available "[i]f plaintiffs demonstrate that irreparable injury is likely in the absence of an injunction." *Couturier*, 572 F.3d at 1081 (internal citation omitted). First and foremost, allowing the RiversEdge Defendants to continue to provide services to the Client Plans and Mismanaged Plans risks additional embezzlement and mismanagement of millions in plan assets, much of which may not be recoverable. In addition, some Mismanaged Plans' trust accounts are underfunded, and others may hold assets of other plans, because of the RiversEdge Defendants' illegal transfers of trust assets between accounts. An immediate accounting by an independent fiduciary of seventeen (17) identified plans which have had suspicious transactions is needed to identify and resolve these issues.

In addition, the RiversEdge Defendants have transferred plan assets into their #RERREBTE account and into the corporate account at PNC bank. These plan assets could be further misappropriated by the RiversEdge Defendants if those accounts are not frozen by this Court.

3.    *The Balance of the Equities Tips in Favor of Injunctive Relief.*

The balance of equities favors an award of injunctive relief for the Acting Secretary in this matter. The removal of existing plan fiduciaries and appointment of an independent fiduciary to protect plan participants and beneficiaries is squarely within the Acting Secretary's authority to enforce ERISA. *Solis v. Hutcheson*, 2012 WL 2151525, at *5–6 (D. Idaho 2012). Recognizing the public interest in protecting against future harm to ERISA plans, courts have rejected

arguments that "ERISA fiduciaries and their associates must be allowed to loot a second pension plan before an injunction may be issued." *Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991); *Solis v. Couturier*, 2009 WL 1748724 at *7. "Accordingly, injunctive relief is available including an injunction to prohibit a party from having further dealings with ERISA covered plans." *Tomasso*, 682 F. Supp. at 1306; accord *Beck*, 947 F.2d at 641 and *Hutcheson*, 2012 WL 2151525, at *5–6.

Here, the harm that would likely occur without an injunction "would leave . . . participants without the benefits whose security ERISA strives above all else to protect." *Couturier*, 572 F.3d at 1081. The participants' interests in the loyal and prudent management of their pension assets far outweigh any legitimate interest that RiversEdge and Palguta may assert to continued access to the funds. Participants are at significant risk of further harm unless this Court stops these Defendants' abuses. This risk exists not only for the Mismanaged Plans but for all Client Plans that used the RiversEdge Defendants as recordkeepers and third-party administrators.  Thus, the balance of the equities favors preliminary relief.

        4.       *An Injunction Is in the Public Interest.*

Defendants RiversEdge and Palguta have violated myriad provisions of ERISA, including but not limited to their duties of prudence and loyalty in ERISA Section 404. They engaged in egregious self-dealing and outright theft of plan assets, in violation of the prohibited transaction and self-dealing rules in ERISA Section 406(a) and (b). RiversEdge and Palguta treated ERISA trust funds as their personal piggy banks, transferring assets to their PNC accounts and concealing their embezzlement through fraudulent account statements. They juggled funds among ERISA plan trust accounts when necessary to make transactions from under-funded accounts. ERISA seeks to protect the public's confidence in the pension system,

and the Acting Secretary's action furthers that interest.

The Court finds the Acting Secretary has shown a reasonable likelihood of success on the merits of the ERISA claims, irreparable harm absent this injunction, and that the balance of the harm to the parties, and that the public interest weigh in favor of an injunction.

**WHEREFORE**, upon motion of the attorneys for the Acting Secretary and for cause shown, it is hereby **ORDERED:**

1.    Defendants RiversEdge ("RiversEdge") and Paul Palguta ("Palguta") (collectively, the "RiversEdge Defendants") and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers (except the Rule 19(a) Defendants), accountants, and attorneys are removed as agents, service providers, administrators and any other position or role involving the Plans, whether or not those plans are covered by ERISA, and are enjoined from acting as fiduciaries on behalf of the Plans, from acting as service providers to the Plans, and from exercising any authority or control with respect to the Plans or their assets.

2.    Notwithstanding anything else in this Order to the contrary, the Rule 19(a) Defendants are permitted to continue to provide asset custodial, recordkeeping, and other services to the Plans pursuant to existing agreements with such Plans and/or RiversEdge, as determined by all Plans.

3.    The RiversEdge Defendants and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers (except the Rule 19(a) Defendants acting lawfully and in accordance with this Order), accountants, attorneys and any other party acting in concert with them or at their direction are enjoined from expending, transferring, hypothecating, secreting, or

22

otherwise obligating or disposing of any assets of the Plans, including from custodial or any other accounts held at MATC and Schwab, and from destroying, altering, or secreting any of all Plans' documents, books, records or electronic files or data or the documents, books, records or electronic files or data of any associated trust accounts, bank accounts, and/or segregated accounts.

4.      Receivership Management, Inc. ("Independent Fiduciary") has been appointed as an independent fiduciary to the Mismanaged Plans and the Client Plans effective February 8, 2024. The RiversEdge Defendants shall pay all reasonable fees and expenses of the Independent Fiduciary for the full amount of services rendered up to $238,918.00.

5.      On its own Motion, the Court has ordered RiversEdge Defendants to (a) deposit into the Court the full balance of all individual bank accounts of Paul Palguta, including but not limited to the account at PNC Bank; and (b) to deposit into the account ending in 6665 in the name of RiversEdge Advanced Retirement Solutions, LLC at PNC Bank all unnegotiated checks for RiversEdge's fees that are in their possession, up to $238,918.00; and (c) to pay the remainder of the funds from the RiversEdge account at PNC Bank to the Court. The Clerk of the Court is hereby ORDERED to ensure that the RiversEdge Defendants have now deposited the full $238,918.00 into the Court.

6.      The reasonable compensation, fees and expenses of the Independent Fiduciary and such person(s) and firm(s) retained by the Independent Fiduciary in the performance of services to the Plans pursuant to this Order shall be paid subject to the following procedures:

        a.   Before causing any payment to be made to the Independent Fiduciary, the

Independent Fiduciary shall provide written notice of such compensation, fees or expenses, by filing a fee notice with this Court and by serving a copy to the Secretary, the RiversEdge Defendants, the Rule 19(a) Defendants and all Plans;

b. The fee notice shall include a detailed invoice itemizing the compensation, fees and expense to be paid;

c. The Independent Fiduciary shall not be required to file, serve, or otherwise deliver the fee notice to any person or persons other than the Court, the Secretary, the RiversEdge Defendants, the Rule 19(a) Defendants, and all Plans; and

d. If an objection to a fee notice or payment by this Court of the compensation, fees, or expenses described therein is filed with this Court within fifteen (15) days after filing of such fee notice, this Court shall hold a hearing on the matter and the compensation, fees, expenses described in the fee notice shall be paid by this Court only to the extent approved by the Court.

e. If no objection to a fee notice or payment by Court of the compensation, fees, or expenses described therein is filed with this Court within fifteen (15) days, the compensation, fees or expenses shall be paid by the Court to the Independent Fiduciary from amounts submitted into the Court pursuant to paragraph 5.

7. Until further order of the Court, the Independent Fiduciary's duties shall be limited as follows:

a. The authority to secure all Plan records from the RiversEdge Defendants in

accordance with this Order.

b.  The authority to assist all Plans in facilitating the transfer of plan records to one or more other recordkeeping service providers in coordination with Rule 19(a) Defendant Schwab Retirement Technologies, Inc., the licensed software licensor and data hosting provider for Defendant RiversEdge.

c.  The authority to conduct an accounting of the assets of the following seventeen (17) Mismanaged Plans:

(1)   RiversEdge 401(k) Profit Sharing Plan;

(2)   Hampton Technical Associates 401(k) Profit Sharing Plan;

(3)   Max Environmental Technologies, Inc. 401(k) Savings Plan;

(4)   LBC Church 403(b) Plan;

(5)   Medical Predictive Science Corporation;

(6)   Christian Aid Mission 403(b) Plan;

(7)   Elite Mechanical, Inc. 401(k) Profit Sharing Plan;

(8)   Leech Tishman Fuscaldo & Lampl, LLC 401(k) Profit Sharing Plan;

(9)   W.N. Tuscano Agency, Inc. 401(k) Savings Plan;

(10)  St. Barnabas Health System Retirement Savings Plan;

(11)  Hawaiian Island Dental, Inc. 401(k) Plan;

(12)  Beaver County Deferred Compensation Plan;

(13)  Ad-base Group 401K Plan;

(14)  Arc of Wabash County Inc. 403(b) Plan;

(15)  Adventure WV Plan;

(16)  The National Fruit Product Co., Inc. 401(k) Employee Savings Plan;

and

(17)  Family Medicine of Albemarle 401(k) Plan.

d.   The exclusive authority to appoint such employees and service providers as the Independent Fiduciary shall, in the Independent Fiduciary's sole discretion, determine are necessary to aid the Independent Fiduciary in the exercise of the Independent Fiduciary's powers, duties, and responsibilities under this Order;

e.   The authority to delegate to such administrators, trustees, attorneys, employees, assigns, agents, and service providers such fiduciary and non-fiduciary responsibilities it has under this Order as the Independent Fiduciary shall determine appropriate.

f.   Notwithstanding anything in this Order, the Independent Fiduciary shall not have any authority to serve as the administrator or trustee of any Plan. The Independent Fiduciary shall have no authority to manage, purchase, or sell any assets of any Plan.

8.   The RiversEdge Defendants, and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, (except the Rule 19(a) Defendants), accountants, attorneys, and any other party acting in concert with them or at their direction are enjoined to preserve, secure, and immediately produce to (1) the Independent Fiduciary upon the Effective Date, and (2) all Plans, at the Plans' direction, all books, records, and documents, including electronic files, that relate to the administration, management, and operation of all Plans and their assets.

9.   The Independent Fiduciary shall have full access to all documents, books, records,

personnel, files, and information of whatever type or description in the possession, custody, or control of the RiversEdge Defendants. In addition, the Independent Fiduciary shall have full access to all documents, books, records, personnel, files and information of whatever type or description relating to RiversEdge and all Plans in the possession or control of the RiversEdge Defendants or their fiduciaries, agents, employees, service providers, depositories, banks, accountants, attorneys, and any other party acting in concert with or at their direction, that relate to the administration, management, and operation of all Plans and their assets. The RiversEdge Defendants shall deliver such records as the Independent Fiduciary may request within five (5) business days after demand therefor or within such other time as the RiversEdge Defendants and the Independent Fiduciary may agree.

10.    The Independent Fiduciary shall not be required to obtain a bond that conforms to the requirements of ERISA section 412, 29 U.S.C. § 1112, because ERISA's bonding requirements do not apply to the Independent Fiduciary's duties hereunder.

11.    Forensic review services provided by MATC under the Independent Fiduciary's direction and as agreed to by MATC and the Independent Fiduciary shall be at no cost.

12.    The Rule 19(a) Defendants are ordered to provide an immediate copy of this Order in this action and notice (within no later than five (5) business days) of this Order to all Plans they service through a trust agreement or custodial agreement. The Rule 19(a) Defendants and the Acting Secretary will work together to prepare the notice to be sent by electronic and certified mail by the Rule 19 Defendants to all Client Plans.  This notice is intended to further facilitate as expeditiously as possible the transition of all Client Plans to new recordkeepers. The notice will include information on other potential

recordkeepers familiar with the Schwab RT system and will also include a copy of this Order. The Rule 19(a) Defendants will provide this notice to all Client Plans.  The notice will also convey the following: "As an affected plan to the above action, you may have standing to participate in the pending action, including the injunctive relief being requested. You should immediately consult with legal counsel to obtain advice and make decisions relative to your interests."

13.   MATC is further ordered to provide immediate copy of this Order in this action and notice (within no later than five (5) business days) of this Order to each Mismanaged Plan. MATC and the Acting Secretary will work together to prepare the notice to be sent by electronic and certified mail to the Mismanaged Plans. This notice is intended to notify the Mismanaged Plans of this lawsuit, to notify them that their accounts at MATC are no longer frozen, to provide the Independent Fiduciary's contact information, to encourage the Mismanaged Plans to assist the Independent Fiduciary during the accounting, and to notify the Mismanaged Plans of their option to contact an attorney for further advice.  The notice will also convey the following:

> As an affected plan to the above action, you may have standing to participate in the pending action, including the injunctive relief being requested. You should immediately consult with legal counsel to obtain advice and make decisions relative to your interests.

14.   Except for deposit of Independent Fiduciary fees to the Court, the RiversEdge Defendants, and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party acting in concert with them or at their direction, shall not withdraw, transfer or access monies in the following accounts:

a.   RiversEdge Corporate Paying Agent Account, Account No. RERREBTE at

MATC;

    b.   Account ending in 6665 in the name of RiversEdge Advanced Retirement Solutions, LLC at PNC Bank.

15.    All monies in the accounts set forth in Paragraph 14 of this Order located at PNC Bank and MATC that are or were subject to the control and/or direction of the RiversEdge Defendants shall be allowed to continue to receive deposits, including from the RiversEdge Defendants, but any and all transfers or withdrawals of funds from those accounts shall be prohibited until further order of this Court.

16.    The Independent Fiduciary shall not be discharged or terminated during the duration of this Order except by leave of Court upon application by either the Acting Secretary or the Independent Fiduciary. Upon termination, discharge, or resignation of the Independent Fiduciary during the term of this Order, the Acting Secretary shall recommend a successor independent fiduciary for appointment by the Court. Recommendations for a successor independent fiduciary shall be made by the Acting Secretary within such periods as the Court, by further order, may provide and require.

17.    Commencing after the Effective Date, on an at least monthly basis, the Independent Fiduciary shall provide the Court with a report of all significant actions taken.

18.    The Independent Fiduciary shall cooperate fully with the Acting Secretary in the exercise of the Acting Secretary's enforcement responsibilities under ERISA, *inter alia*, by promptly providing such documents, information and persons under the Independent Fiduciary's control as the Acting Secretary from time to time may request.  Nothing herein shall be construed to limit the rights of the Acting Secretary to maintain access to

documents, information or persons or to waive or restrict the exercise by the Independent Fiduciary and any individual of his or her constitutional rights.

19.    The Acting Secretary may provide to the Independent Fiduciary any documents necessary to assist with its duties relating to the Client Plan assets.  To the extent any privilege or confidentiality applies to any such documents, the privilege or confidentiality is not waived and is preserved when documents are provided to the Independent Fiduciary.  The Acting Secretary will comply with the Freedom of Information Act and Federal Records Act for any such documents provided to the Independent Fiduciary.

20.    The Acting Secretary has alleged no claims against the Rule 19(a) Defendants in her complaint.  The Rule 19(a) Defendants are named as parties-defendants for purposes of this Order so that the Department of Labor, the Independent Fiduciary, and the Rule 19(a) Defendants can work cooperatively to assist the Plans.  To that end, the Rule 19(a) Defendants shall cooperate with the Independent Fiduciary to provide and continue to provide all Plans the services that the Rule 19(a) Defendants have been providing for all Plans and agreed to provide for all Plans.  The Rule 19(a) Defendants shall also preserve and secure all books, records, and documents, including electronic files, that relate to the administration, management, and operation of all Client Plans and their assets, and shall produce to the Independent Fiduciary or provide the Independent Fiduciary access to, all books, records, and documents, including electronic files, that relate to the administration, management, and operation of all Client Plans and their assets that are requested by the Independent Fiduciary.

21.    Irreparable harm will not occur from unfreezing the accounts of the Mismanaged

Plans at MATC, and the Court hereby unfreezes those accounts. MATC is ordered not to close the custodial accounts for the 17 Mismanaged Plans until the termination of the accounting and of this litigation. Because each Mismanaged Plan will retain an account at MATC, the funds recovered from the RiversEdge Defendants may be deposited into those accounts in accordance with the independent fiduciary's accounting. Nothing in this Order prohibits the 17 Mismanaged Plans from transferring their assets to new asset custodians.

22.     The Mismanaged Plans and the Client Plans have been notified of this action. The Court finds that the three non-ERISA Mismanaged Plans are necessary parties pursuant to Federal Rule of Civil Procedure 19(a). These non-ERISA Mismanaged Plans are as follows: The LCBC Church Plan; the Christian Aid Mission 403(b) Plan; and the Beaver Country Deferred Compensation Plan. The Court directs the Acting Secretary to file an amended complaint including these parties as Rule 19(a) defendants on or before March 12, 2024.

23.   The RiversEdge Defendants shall require anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, any other party acting in concert with them or at their direction, to discharge their duties in full compliance with the terms of this Order and shall require that they not take any action in the discharge of such duties that is inconsistent with the terms of this Order.  The RiversEdge Defendants shall require anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party acting in concert with them or at their direction, including all persons

who serve in any capacity that involves decision making authority for them, as a condition of maintaining their relationship with them, to cooperate completely and immediately with the Independent Fiduciary in the performance of the Independent Fiduciary's duties and responsibilities.

24.    The RiversEdge Defendants shall provide a copy of this Order to anyone acting on their behalf, including all of their officers, agents, employees, assigns, subsidiaries, affiliates, service providers (except the Rule 19(a) Defendants), accountants, attorneys, and any other party acting concert with them or at their direction, including all persons who serve in any capacity that involves any decision making authority for them with respect to the Plans within five (5) days after entry of this Order.

25.    Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, no bond or other security shall be required of the Acting Secretary.

26.    Regarding the RiversEdge 401(k) Plan, it is hereby ORDERED that all relief set forth in the TRO of February 5, 2024 shall be included as relief in this Preliminary Injunction Order.

Dated:  This 20th day of February, 2024.

Marilyn J. Horan
United States District Court Judge